

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JPM:GSM
F. #2021R00137

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 27, 2022

By ECF and Email

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  United States v. Ryan Behar
  Criminal Docket No. 21-187 (RPK)

Dear Judge Kovner:

The government respectfully submits this letter in advance of sentencing in this case, which is scheduled for August 3, 2022, at 1:00 p.m., and in response to the defendant's sentencing submission dated July 25, 2022 (ECF 29) ("Def. Mem.") (filed under seal). On July 7, 2021, the defendant Ryan Behar pleaded guilty to transferring obscene material to a minor, in violation of 18 U.S.C. § 1470 ("Count Four"), and to committing that offense while required by state law to register as a sex offender, in violation of 18 U.S.C. § 2260A ("Count Six"). For the reasons that follow, the government respectfully submits that a sentence of 18 to 24 months in custody on Count Four, the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") estimate in the parties' plea agreement, to run consecutively to a mandatory term of imprisonment of 120 months on Count Six (i.e., an effective sentence of 138 to 144 months' custody), would be commensurate with the defendant's serious conduct.

I.  **Background**

The defendant is a 43-year-old registered sex offender with a long history of criminal misconduct involving minors. See Presentence Investigation Report dated October 13, 2021 ("PSR") ¶ 45. Notwithstanding his February 2018 conviction for an offense involving a 13-year-old victim and his March 2020 sentence of 364 days' imprisonment for a probation violation, the defendant established an Instagram account in August 2020 (following his July 2020 release from custody), which he used to contact numerous minors from August 2020 to January 2021. See id. ¶¶ 11-23, 45. Through this account, while pretending to be a teenager, the defendant repeatedly engaged in sexually explicit

conversations with young girls (some of whom reside within the Eastern District of New York), sent them images of erect male genitalia, and asked them to produce and send him child erotica and child pornography. See id. ¶¶ 11-23. Then, on January 24, 2021, the defendant attempted to meet in person with an Instagram user, who he believed to be a minor, for the purpose of engaging in sexual acts and was arrested by the New York City Police Department ("NYPD"). See id. ¶¶ 8-11. Incident to his arrest, officers recovered an Apple iPhone cellular device from the defendant's person. See id. ¶ 10. Although the misconduct underlying the defendant's January 24, 2021 arrest was not charged in the Indictment in the above captioned-matter, that misconduct led to the discovery of the conduct charged in the Indictment. See id. ¶ 7.

    A.    <u>The Defendant's Attempt to Meet "Lola"</u>

As set forth below, between approximately January 17, 2021, and January 20, 2021, the then 42-year-old defendant attempted to lure a 12-year-old girl ("Victim-1") online to engage in sexual activity and to provide the defendant with sexually explicit images and/or video. See id. Specifically, on approximately January 17, 2021, the defendant messaged Victim-1 using his Instagram account. See id. Falsely claiming he was a teenage boy—although, as referenced above, he was in fact 42 years old—the defendant asked Victim-1 for her age. See id. ¶ 8. Victim-1 replied that she was 12 years old. Id. The defendant then requested that she meet him inside of the Staten Island Mall (the "Mall"). Id. Then, on or about January 20, 2021, the defendant had an Instagram Live chat to instruct Victim-1 to stand up and lift her shirt. Id. Victim-1 then informed her parents about the defendant's messages. Id.

Later on January 20, 2021, Victim-1's aunt created another Instagram account and used it to message the defendant's account, stating she was a 17-year-old girl named "Lola." Id. Using Instagram, Victim-1's aunt communicated with the defendant between approximately January 20, 2021, and January 24, 2021. Id. ¶¶ 8-9. The defendant, posing as a teenager named "Vinny Conti," told "Lola" that his older brother was "looking for a girlfriend." Id. ¶ 9. When "Lola" asked for a picture of "Conti's" brother, the defendant provided a picture of himself. Id. The defendant then repeatedly asked "Lola" to meet him at the Mall, and on several occasions he expressed concern about being caught engaging in illegal conduct, stating "[The defendant] can smell something fishy he wants to be extra careful" and "Your [sic] underage . . . [the defendant] don't wanna get in trouble with the law." See id. ¶ 9. Nonetheless, when asked if the defendant was "ok with ["Lola"] being 17," the defendant said he was. Id. He then proceeded to send "Lola" a number of sexually-oriented messages, including (i) "Is your chest tiny or big," (ii) "What if [the defendant] said show me your boobs what will u say," (iii) "How u gonna show [the defendant] your chest," (iv) "What are u both gonna do in a hotel," and (v) "if u saw his thingy what u going to do." Id. Then, on January 24, 2021, the defendant attempted to meet "Lola" at the Mall. Id. ¶ 10.

Upon his arrival at the Mall, the defendant messaged the Instagram account created by Victim-1's aunt. Id. He then described in messages, and provided two pictures of, the outfit he was wearing. Id. At that point, Victim-1's father entered the Mall and saw the defendant wearing an outfit matching the description and pictures, and Victim-1's mother

2

notified the police. See id. Responding NYPD officers arrested the defendant approximately one block from the Mall. Id. Additionally, as the defendant was being apprehended, officers observed him appearing to delete materials from an Apple iPhone. Id. A subsequent review of the device, pursuant to a judicially authorized search warrant, showed, consistent with the officers' observations, that applications and other data were erased from the device on the day of the defendant's arrest, including social media and messaging applications such as Instagram. Id. A subsequent judicially authorized search of records associated with the defendant's Instagram account uncovered additional misconduct involving children for the period from August 2020 to January 2021. See id.

      B.      The Defendant's Misconduct from August 2020 Through January 2021 Via Instagram

As discussed above, in February 2021, Federal Bureau of Investigation agents executed a search warrant of the defendant's Instagram account. Id. ¶ 10. Those records established that the defendant had a consistent pattern of repeated inappropriate contact with minors from August 2020 to January 2021. See id. ¶¶ 11-23. Specifically, the defendant falsely posed as a minor, engaged numerous children in sexually explicit communications, asked for each user's age, and sent underage victims images of an erect penis, often before stating "That's mine." See id. ¶¶ 11-12, 15-20. In addition, the search of the defendant's Instagram account revealed that, from September 13, 2020 to October 5, 2020, the defendant communicated with a 16-year-old girl on Instagram with whom he engaged in ongoing sexual communications, including directing her to perform sexual acts while sending him live video and images of such acts. See id. ¶ 13-14. The search of the account also revealed that the defendant received sexually explicit images of minors from two other users. See id. ¶ 23.

      1.      The Defendant's Communications with Jane Doe A

On approximately September 13, 2020, the defendant began communicating with an Instagram account user who identified herself as a 16-year-old girl ("Jane Doe A"). Id. ¶ 13. FBI investigators subsequently confirmed that Jane Doe A was 16 years old at the time of the communications.

During his communications with Jane Doe A, the defendant repeatedly made sexually explicit comments and requests to Jane Doe A, including "[r]ide my hard fat dick," "[m]ake my dick hard," "Get naked bend over bounce your titties please" and "Can you bend over I wanna put my dick in your ass." See id. These communications continued over several weeks from September 2020 to October 2020. See id. On September 16, 2020, the defendant sent Jane Doe A an image of an erect penis and stated, "That's mine." Id. The defendant sent another image of an erect penis to Jane Doe A on September 26, 2020, again stating, "That's mine." Id. On several occasions, the defendant also instructed Jane Doe A to produce and send the defendant nude images and video, including visual depictions of her masturbating. Id. ¶ 14. For example, on September 26, 2020, while participating in a video call via Instagram with Jane Doe A, the defendant gave Jane Doe A the following directions: "Go in bathroom . . . Keep camera on . . . Change clothes in front of me . . . Lower . . . Stay

on camera . . . Do you have hairbrush . . . Use that in your ass . . . Stay on cam . . . Love u . . . Keep camera on . . . Please . . . Bend over." Id.  In addition, on other occasions the defendant sent Jane Doe A requests such as, "[s]end full body" and "[s]end video." Id.

> 2. The Defendant's Transfer of Obscene Materials to Jane Does B, C, D, and E

In the period surrounding the defendant's communications with Jane Doe A, from August 2020 through January 2021, the defendant used the Instagram account to falsely represent he was a minor and to engage in sexually explicit communications with numerous other users who identified themselves as minors as young as ten years old.  See id. ¶¶ 11, 15-22.  During many of these communications, the defendant asked the victim for her age and, learning that the user was a minor, sent the victim an image of an erect penis, often before stating "This is mine."  Id.  As examples, the following table contains the given age of ten victims and the date on which the defendant sent each victim an image of an erect penis.  The defendant's communications with these victims are not charged in the Indictment currently before the Court.

| Given Age of Victim | Date the Defendant Sent Image of Erect Penis |
|---|---|
| 15 years old | September 7, 2020 |
| 12 years old | September 9, 2020 |
| 14 years old | September 21, 2020 |
| 15 years old | October 25, 2020 |
| 13 years old | December 3, 2020 |
| 12 years old | December 8, 2020 |
| 11 years old | December 19, 2020 |
| 12 years old | December 21, 2020 |
| 12 years old | January 6, 2021 |
| 12 years old | January 12, 2021 |

In addition to these ten examples, the defendant sent an image of an erect penis to Jane Does B, C, D, and E.  Id. ¶¶ 15-22.  While pretending to be a minor, the defendant engaged in lengthy communications with each of these victims, often asking for images of their bodies.  See id.  The table below summarizes the given ages of the victim and defendant in each of these communications, as well as the date the defendant sent each

victim a picture of male genitals and the date range of the defendant's communications with each victim.

| Jane Doe | Given Age of Victim | Given Age of the Defendant | Date the Defendant Sent Victim Image of Erect Penis | Date Range of Communications |
|---|---|---|---|---|
| B | 10 years old | 13 years old | Sept. 22, 2020 | Sept. 13, 2020— Sept. 23, 2020 |
| C | 14 years old | 14 years old | Sept. 21, 2020 | Sept. 21, 2020— Sept. 22, 2020 |
| D | 12 years old | 13 years old | Oct. 10, 2020 | Oct. 10, 2020— Oct. 12, 2020 |
| E | 13 years old | 14 years old | Dec. 21, 2020 | Dec. 19, 2020— Dec. 21, 2020 |

The communications with Jane Does B, C, and E are summarized below.

        a.        *Jane Doe B*

On approximately September 13, 2020, the defendant first contacted Jane Doe B. Id. ¶ 15. Several days later, after the defendant asked for Jane Doe B's age, she indicated that she was ten years old. Id. On September 22, 2020, Jane Doe B placed a brief call to the defendant, after which the defendant repeatedly attempted to place video calls to Jane Doe B and sent her messages, such as, "Go on video," "Show yourself please," "Can't see u," "Oh u a boy sorry. U have boy parts. Bye boy[.]" Id. Jane Doe B then asked the defendant for his age, and the defendant wrote, "I am 13." Id. The defendant then continued attempting to place video calls to Jane Doe B and sent her antagonistic messages, such as, "U have boy parts," "Show undershirt," "Can u lift up shirt," and "U wanna see my bat[?]" Id. After continued communications during the same evening, the defendant sent Jane Doe B an image of an erect penis and accompanied the image with, "That's mine. U like[?]" Id. The defendant went on to attempt additional video calls and to repeatedly message Jane Doe B, finally ending with Jane Doe B responding, "stop texting me," to which the defendant replied "Why boy[?]" Id. ¶ 16.

        b.        *Jane Doe C*

The defendant first contacted Jane Doe C on September 21, 2020, asking Jane Doe C's age. Id. ¶ 17. Jane Doe C indicated that she was 14, and the defendant replied, "I

5

am 14 also." Id.  During the subsequent communications, Jane Doe C indicated that she was an "ugly" single girl who nobody likes, and the defendant claimed he was similarly single, "ugly," and not wanted by anyone.  Id.  The defendant then sent Jane Doe C a picture of a diamond engagement ring and told Jane Doe C that he bought it for her.  Id.  He also claimed, as he did in communications with numerous minors, that his "mom just died yesterday from cancer[.]"  See id.  Jane Doe C and the defendant continued to talk flirtatiously with one another, and the defendant began to make repeated video calls to Jane Doe C before stating, "Bye I am going to end my life[,]" again a tactic that the defendant used with numerous minors.  See id.  After further communications, the defendant asked Jane Doe C, "U chubby or skinny[?]"  See id.  In response, Jane Doe C sent the defendant a picture of herself and another young girl.  See id.  After calling Jane Doe C "pretty," the defendant asked, "U wanna see my bat[?]," to which Jane Doe C replied, "sure."  See id.  The defendant then wrote, "If I was with u what would we be doing" and subsequently sent Jane Doe C a picture of an erect penis and wrote, "That's mine . . . Do u like it . . . What will u do with that[?]"  See id.

Over the course of the following day, the defendant continued to message Jane Doe C, requesting pictures of her body.  See id. ¶ 18.  In response, Jane Doe C sent the defendant numerous pictures in which she is fully clothed.  Id.  However, the defendant repeatedly asked Jane Doe C if he could see her body, attempted to place additional video calls to her, and wrote that he was "heartbroken[.]"  Id.

        c.     *Jane Doe E*

On December 19, 2020, the defendant messaged Jane Doe E repeatedly, asking her age and location, and writing "I am 14 [what about you?]"  See Id. ¶ 21.  Jane Doe E replied that she was thirteen and from New York.  Id.  Subsequently, the defendant sent Jane Doe E an image of a boy sitting upright in a vehicle passenger seat.  Id.  He then attempted to call Jane Doe E and asked her if she wanted a boyfriend, to which she replied "Don't call me pls I don't know you."  Id.  The defendant introduced himself as "Vinny" and asked Jane Doe E if she was afraid to meet him.  Id.  Jane Doe E then wrote that she would "give [the defendant] a shot," but wrote the following day that she only wanted to meet by text.  Id.  In response, the defendant began teasing her and stating she was too afraid to meet him in-person.  Id.  Eventually, frustrated with Jane Doe E, the defendant wrote, "U know what suck my dick" and sent Jane Doe E an image of an erect penis.  Id.  In response, Jane Doe E blocked the defendant.  Id.

        3.     The Offenses of Conviction

        a.     *Count Four - Transfer of Obscene Materials to Jane Doe D*

The charges to which the defendant pleaded guilty on July 7, 2021, pertain to his sexually explicit communications with Jane Doe D, who was 12 years old at the time of the communications.  See id. ¶¶ 19-20.  On October 10, 2020, Jane Doe D initially messaged the defendant, writing "Hey," to which the defendant responded "Hello how old are u."  See

6

id. ¶ 19. Jane Doe D replied "12 . . . You" and the defendant responded several hours later, "I am 13." See id.

Jane Doe D subsequently sent the defendant a picture depicting a fully-clothed young girl from her shoulders up and wrote, "This is what I look like." See id. The defendant immediately responded "Pretty . . . Send body pic." See id. After Jane Doe D sent the defendant two files, he responded "Pick up shirt." Id. Jane Doe D then sent two more attachments, and stated "I hate my boobs . . . They are not Full grown," to which the defendant responded, "Send more." See id. After the defendant asked several more times, he sent Jane Doe D a picture of a boy which he said was his brother, and a second picture of a young boy after which he wrote "That's me." See id.

As the communications between the defendant and Jane Doe D continued, he repeatedly asked her to provide additional pictures, to which she responded, "I am not all about sending nudes." See id. ¶ 20. The defendant, after claiming that his "mom just died yesterday from cancer" and threatening "I will just end my life," eventually sent Jane Doe D an image of an erect male penis in which the penis appears to be held at its base by a hand. See id. After sending the image the defendant wrote "That's mine." Id. Clearly upset, Jane Doe D responded, "We are fucking over I told you I DONT [sic] LIKE NUDES" (emphasis in original). See id. In response, the defendant sent Jane Doe D an image of a diamond ring and stated, "I bought u that . . . Swear on my life." However, several minutes later the defendant continued to ask for pictures of Jane Doe D, stating "I will [sic] like to see your body," after which Jane Doe D stopped responding to the defendant's messages. See id.

### b. Count Six – Offense by a Registered Sex Offender

The defendant is a registered sex offender. See id. ¶ 45. Accordingly, not only did he transfer obscene materials to a minor (Jane Doe D), in violation of 18 U.S.C. § 1470 (Count 4), but he also committed that felony offense while required to register as a sex offender, in violation of 18 U.S.C. § 2260A (Count 6). A factual summary of the misconduct which led to the defendant's status as a registered sex offender is as follows.

In approximately August 2017, the defendant began posing as a 14-year-old boy on Instagram and Facebook and initiated repeated inappropriate contact with a minor victim, including sending her an image of his erect penis and requesting pornographic images from the victim. See id. The victim's mother also reported that the defendant attempted to have the victim meet the defendant at his home, but that the defendant's plan was foiled when the victim's mother observed that the defendant was an adult. See id. The defendant was subsequently arrested on February 5, 2018. See id. On February 22, 2018, he pled guilty in Richmond County Supreme Court, to attempted dissemination of indecent material to a minor in the first degree, in violation of New York Penal Law § 235.22, for which he was sentenced to three years' probation and was required to register with the New York State Division of Criminal Justice Services as a level-one sex offender for a period of 20 years. See id. The defendant subsequently resumed this pattern of conduct, including using an alias to have sexual conversations with minors, and was resentenced to 364 days' custody for violating his probation on March 9, 2020. See id.

In July 2020, the defendant was released from custody for his probation violation. Id. The defendant created his Instagram account during the following month.

## II. Procedural History

On July 7, 2021, the defendant pleaded guilty, pursuant to a plea agreement, to two counts of a six-count Indictment: transfer of obscene material to a minor (Count Four) and offense by a registered sex offender (Count Six). Id. ¶¶ 1-3.[1]

## III. Legal Standard

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed,

---

[1] The government will dismiss the remaining counts at the sentencing hearing.

8

"[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

## IV. Guidelines Calculation

The government submits that the following Guidelines calculation, which is consistent with the calculation set forth in the PSR, should be adopted by the Court:

Count Four: Transfer of Obscene Material to a Minor

| | | |
|---|---|---:|
| | Base Offense Level (§ 2G3.1(a)) | 10 |
| Plus: | The offense involved distribution to a minor (§ 2G3.1(b)(1)(C)) | +5 |
| Plus: | The offense involved the use of a computer or an interactive computer service (§ 2G3.1(b)(3)) | +2 |
| Less: | Acceptance of Responsibility (§ 3E1.1) | –3 |
| | Total: | 14 |

Count Six: Offense by a Registered Sex Offender

The guideline sentence for a violation of 18 U.S.C. § 2260A is the term of imprisonment required by statute, i.e., ten years' custody. See § 2A3.6.

PSR ¶¶ 32-43, 89-91. Based upon a total offense level of 14 and Criminal History Category II, the applicable Guidelines range for the defendant is 18 to 24 months' imprisonment on Count Four. Id. ¶ 91. Furthermore, any sentence of imprisonment under Count Four must run consecutively to the mandatory term of imprisonment of 120 months under Count Six. See id. ¶¶ 89-91. Thus, the effective guidelines range is 138 to 144 months' custody.

## V. Argument

The government respectfully submits that a sentence within the range of 138 to 144 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. Such a sentence is appropriate given the nature and seriousness of the offenses, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment, to afford adequate deterrence and to protect the public.

The nature and circumstances of the defendant's crimes are disturbing and have indelibly harmed young, defenseless victims. With regard to the conduct underlying Counts Four and Six of the Indictment, and as outlined above, in October 2020, while posing

on Instagram as a teenage boy, then 41-year-old Behar contacted Jane Doe D and asked for her age. In response, the victim indicated that she was 12 years old and provided an image of a young girl, stating "This is what I look like." Nonetheless, the defendant then repeatedly asked the victim to send him images of her body. When the victim refused, Behar sent her a graphic image of adult male genitals and wrote to the victim "that's mine," before he continued to press the victim for "full body" images.

The defendant victimized Jane Doe D while he was required by state law to register as a sex offender. Specifically, the defendant was previously convicted in February 2018 in Richmond County Supreme Court for attempted dissemination of indecent material to a minor in the first degree, after sending sexually explicit material over social media to another female minor victim. Following that conviction, Behar was required to register with the New York State Division of Criminal Justice Services as a level-one sex offender pursuant to the New York Sex Offender Registration Act.

If his actions with regard to Jane Doe D were not troubling enough, the defendant's history and characteristics indicate that his predatory conduct is serial in nature. In addition to the misconduct underlying his previous conviction and probation violation, the defendant's misconduct using Instagram impacted many more young children than is reflected in the Indictment in this case. In fact, the defendant created the Instagram account in August 2020—shortly after being released from custody in July 2020—and used the account on a daily basis to seek out and exploit young children until he was arrested on January 24, 2021.

Finally, a Guidelines sentence would serve to provide general deterrence to others who would sexually exploit children. The sexual exploitation of children has been significantly facilitated by the various tools of this digital era. And, as demonstrated here, a defendant can grievously harm (and attempt to harm) multiple children in a short period of time. As such, the sentence imposed must give notice that the crime has serious consequences in order to provide general deterrence.

The defendant seeks a downward variance to a sentence of 10 years' and one day's imprisonment (the mandatory sentence for Count Six and one day for Count Four) in light of ████████████████████████████████████████████ see Def. Mem. at 7-9; and because the conditions at the Metropolitan Detention Center ("MDC") have been harsh during his confinement, id. at 10-11. None of these factors alone or in totality warrant the proposed sentence (120 months and one day), which is a significant discount from the low-end of the range requested by the government (138 months' incarceration), in light of the defendant's serious criminal conduct and the aggravating circumstances of the offenses here.[2]

---

[2] The government respectfully requests that a redacted version of this letter be filed publicly, sealing this select portion of the motion that reveals health information protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). See Offor v. Mercy Med. Ctr., 167 F. Supp. 3d 414, 445 (E.D.N.Y. 2016) ("Courts in this Circuit have

   While the defendant's submission, including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the defendant's own conduct has shown a clear understanding of the nature of his misconduct.  For example, the defendant went to great lengths to hide his identity while online, using photos to falsely represent that he was a child and seeking out children as young as ten years old who would be more susceptible to his deception.  In fact, it was only when the defendant interacted with adults using his Instagram account that he would sometimes disclose his true identity.  Thus, the defendant recognized that his communications with minors were inappropriate and, indeed, given his recent criminal history and his release from custody the month prior to creating the Instagram account, the defendant certainly recognized that his conduct was criminal.  In addition, recognizing their vulnerability, the defendant further manipulated his young victims by threatening suicide, claiming that his mother had died from cancer, and pretending he had acquired jewelry for his victims.

   The defendant also seeks a variance in light of the conditions that resulted from the COVID-19 pandemic.  Although "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," <u>United States v. Carty</u>, 264 F.3d 191, 196 (2d Cir. 2001), a departure or variance is not appropriate here.  In the face of the global pandemic, the MDC modified operations and adopted precautionary measures to safeguard the health and safety of its inmates, staff and the community at large.  As explained, the defendant's crimes have caused far greater harm to others than he has himself experienced at the MDC.

---

repeatedly held that information protected by HIPAA is not subject to a First Amendment or common-law right of access and thus have sealed docket entries and redacted documents that contain such information."), <u>vacated in part on other grounds</u>, 676 F. App'x 51 (2d Cir. 2017).

11

## VI. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence within the applicable Guidelines range of 138 to 144 months is appropriate in this case.

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

By:  /s/ Garen S. Marshall
Garen S. Marshall
Assistant U.S. Attorney
(718) 254-6569

cc: Kannan Sundaram, Esq. (counsel for the defendant) (by ECF and email)
Frank Nikolaidis, U.S. Probation Officer (by email)